UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60963-VALLE

<u>CONSENT CASE</u>

TONY JULES,

      Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

      Defendant.

_____

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

THIS MATTER is before the Court on Plaintiff Tony Jules' Motion for Summary Judgment and Defendant Nancy A. Berryhill's, Acting Commissioner of the Social Security Administration, Motion for Summary Judgment and Response (ECF Nos. 19, 20, 21) (the "Motions"). Pursuant to the parties' consent, this case is before the undersigned for all proceedings, including trial and entry of final judgment. (ECF Nos. 15, 16); *see also* 28 U.S.C. § 636(c).

Accordingly, after due consideration of the record, the Motions, and having heard oral argument and being otherwise fully advised on the matter, Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, and the Administrative Law Judge's ("ALJ's") Decision is **AFFIRMED** for the reasons set forth below.

# I.    PROCEDURAL HISTORY

This suit involves applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act").  Plaintiff alleged a disability onset date of April 1, 2014, which he later amended to January 1, 2016.  (R. 39, 186).[1]  Plaintiff's claim was denied initially and again upon reconsideration.  (R. 108-13, 118-28).  Plaintiff subsequently requested a hearing, which was held before ALJ Sylvia H. Alonso on March 17, 2017.  (R. 36, 129-130).  Plaintiff, appearing with counsel, and a Vocational Expert, both testified at the hearing.  (R. 38-66).

On May 2, 2017, the ALJ issued a decision (the "Decision") denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 21-35).  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see also* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.  (ECF Nos. 19, 20, 21).

# II.    STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to

---

[1] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer.  *See* (ECF Nos. 13 and 14).

support a conclusion." *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citing *Bloodsworth*, 703 F.2d at 1239); *Brightmon,* 743 F. App'x at 351 (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423 (standard for DIB), 1382 (standard for SSI). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?

(3)　　　Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

(4)　　　Is the person unable to perform his or her former occupation?

(5)　　　Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability.  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004).  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted).  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the

claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant can adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

## III.   THE RECORD

### A.   Plaintiff's Testimony and Relevant Background

Plaintiff was 62 years old at the time of the administrative hearing. (R. 42). Plaintiff was born in Haiti, where he attended school through 9th or 11th grade. *Compare* (R. 42) (Plaintiff's testimony that he completed 9th grade) *with* (R. 243, 373) (Adult Disability Report and report to consultative examiner noting that Plaintiff completed 11th grade).

Plaintiff alleged a disability due to a stroke and head injury. (R. 67, 73). At the administrative hearing, Plaintiff testified that he suffered two strokes in March 2014, and has had constant and severe pain in his left upper and lower extremities ever since.[2] (R. 50, 53). Plaintiff testified that one of his doctors prescribed a cane, but could not recall who prescribed it and admitted that he never used the cane at work. (R. 50, 52-53). Plaintiff estimated that the pain on his left leg and side limited his ability to stand to less than 15 minutes, sit for between 6-8 minutes, and walk for about 2-5 minutes. (R. 53-55). Plaintiff described his left leg and foot as "terrible," and said he had physical therapy exercises to do at home. (R. 55).

Regarding the pain in his upper extremities, Plaintiff testified that he suffered from constant severe pain in his left shoulder, much as he did in his legs. (R. 56). The shoulder pain sometimes

---

[2] Plaintiff's CT scan indicates that he actually suffered from three strokes. (R. 333).

affected his ability to get dressed.  *Id.*  Plaintiff lifted between 10 to 11 pounds at his maintenance job at McDonald's.  *Id.*  Plaintiff complained that his left hand was very sensitive to cold, and he could not get "anything frozen" at his McDonald's job.  (R. 56-57).  Plaintiff took pain, sleep, and blood circulation medications without side effects.  (R. 57-58).

In terms of work and daily activities, Plaintiff testified that he has worked at McDonald's since 1981.  (R. 49).  Plaintiff works between 9 to 12 hours during a 5-day week, doing maintenance work.  (R. 48).  Since the stroke, Plaintiff can no longer operate the dishwasher.  *Id.* Plaintiff lives alone in an apartment, which he shares during the school year with his 16-year-old son.  (R. 43, 58-59).  Although Plaintiff is physically able to drive and "never [had a] problem driv[ing]," he does not drive because his license is expired.  (R. 45-46).

**B**.  **Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a kitchen helper (an unskilled, medium job with an SVP of 2); and cleaner, commercial or institutional (an unskilled, heavy job with an SVP of 2).  (R. 60-61).  The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and work experience with the limitations in Plaintiff's RFC, could perform Plaintiff's past relevant work.  (R. 61).  Specifically, the ALJ limited the hypothetical individual to frequently climbing ramps, stairs, ladders, ropes, and scaffolds; frequently stooping, kneeling, crouching, and crawling; frequently handling, fingering, and feeling with the left upper extremity; and frequent bilateral far acuity.  *Id.* Additionally, the individual must avoid concentrated exposure to extreme cold, heat, and humidity.[3]  *Id.*  In response, the VE advised that the hypothetical individual could perform

---

[3] This RFC generally comports with the RFC of State Agency consultant Dr. Thomas Renny.  *See* (R. 85-88, 95-98) (reflecting RFC similar to ALJ's, except for additional limitations on standing, walking, and sitting, with normal breaks, for 6 hours in an 8-hour workday).

Plaintiff's past relevant work as a kitchen helper. (R. 62). According to the VE, a "Kitchen Helper basically works in the back of the kitchen gathering supplies, putting them out, washing trays and cookware, and there is nothing in the hypothetical that would prevent those essential duties of Kitchen Helper." *Id.* The VE thus concluded that Plaintiff's past work would be "consistent with the DOT."[4] *Id.*

Next, the ALJ asked the VE whether there were other jobs in the national economy that a hypothetical individual with Plaintiff's RFC could perform. (R. 62-63). The VE testified that such an individual could also work as a bagger (an unskilled, medium job with an SVP of 2), cleaner II (an unskilled, medium job with an SVP of 1), and merchandise deliverer (an unskilled, medium job with an SVP of 2). (R. 63-64). In response to questions from the ALJ, the VE testified that there were no conflicts, apparent or otherwise, between the hypothetical limitations and the DOT. *Id.*

Plaintiff's counsel further limited the hypothetical individual to only occasional (as opposed to frequent) handling, fingering, and feeling with the left upper extremity. (R. 64). The VE testified that such an individual would be precluded from these jobs, unless the employer offered a "reasonable accommodation." (R. 65). Additionally, if the individual needed to use a cane, that individual would be precluded from all jobs at the medium exertional level. *Id.* Lastly, if the individual were to be off task more than 5% of the work day in closely supervised occupations and more than 15% in loosely supervised occupations and be absent more than 6 to 10 days a year, that individual would be precluded from all work. *Id.*

---

[4] "DOT" refers to the *Dictionary of Occupational Titles* published by the Department of Labor. *Olney v. Comm'r of Soc. Sec.*, No. 2:17-CV-349-FTM-29CM, 2018 WL 4760799, at *11 (M.D. Fla. July 30, 2018) (noting that an ALJ is permitted to consider the DOT), *report and recommendation adopted*, No. 2:17-CV-349-FTM-29CM, 2018 WL 4357134 (M.D. Fla. Sept. 13, 2018).

## C.    Relevant Medical Records

The administrative record contains Plaintiff's medical records from March 2014 through January 2017.  (ECF No. 14 at 318-437).  These records show that Plaintiff had three strokes in 2014, and continued to suffer from high blood pressure, left leg and arm pain, and sciatica, through the date of the administrative hearing.

### 1.    *Holy Cross Hospital Emergency Room*

On March 5, 2014, Plaintiff was taken by ambulance to the emergency room at Holy Cross Hospital, complaining of weakness in his left arm and "droop[ing]" on the left side of his face. (R. 319).  A CT scan confirmed that Plaintiff suffered three strokes: one in the right temporoparietal region; another in the left occipital region; and one in the right cerebellum. (R. 322, 333).  Plaintiff was prescribed medications to control his high blood pressure, which was "probably the reason for the [strokes]."  (R. 318).  One day later, Plaintiff checked himself out of the Hospital against medical advice.  *Id.*

In November 2016, Plaintiff returned to the emergency room, complaining of pain and burning in his left leg.   (R. 432).  Plaintiff reported that he had been experiencing "this burning pain" in his left leg since the strokes in 2014.  *Id.*  Plaintiff complained that the pain worsened when he walked, and that his left leg felt weak.  *Id.*  Upon physical examination, Plaintiff had only mild weakness to his left leg (4.5 strength, with 5 being normal strength), and was diagnosed with sciatica with no focal neurological deficit.  (R. 433).  Plaintiff's blood pressure was high, at 162/85. (R. 432, 434).   Laboratory testing confirmed that Plaintiff did not suffer from deep vein thrombosis, lower extremity arterial insufficiency, or another stroke.  (R. 435-37).

### 2. *Left Shoulder MRI*

On April 14, 2014, Plaintiff visited POM MRI complaining of pain in his left shoulder. (R. 369). Plaintiff reported "an object had fall[en] on his left shoulder one year prior to the examination." *Id*. The MRI revealed "mild spurring" and no acute fracture or subluxation. *Id*.

### 3. *Dr. Charles H. Richard, D.O. – Treating Physician*

Dr. Richard treated Plaintiff fourteen times between March 2014 and January 2017. (R. 418-30). During many of these office visits, Plaintiff complained of pain and weakness on his left side and leg. *See, e.g.,* (R. 419-24) (2014-15 visits noting complaints of left side weakness). On a few occasions, Plaintiff also complained of cramping in his hands. *See, e.g.,* (R. 426) (June 2014 visit complaining of cramps and electric sensation in his hands); (R. 425) (complaining of difficulty opening a bottle). At Plaintiff's January 2017 visit, Plaintiff complained of lumbar pain, and a lumbar MRI was discussed. (R. 418). During treatment, Dr. Richard prescribed a variety of pain medications, including Lisinopril and Naproxen (R. 428), Restoril and Cyproheptadine (R. 427), Gabapentin (R. 426), Ultracet (R. 425), Vicodin (R. 420), and Ultram (R. 418).

### 4. *Dr. Stanley Rabinowitz – Consultative Examiner*

In March 2015, approximately one year after Plaintiff's strokes, Dr. Rabinowitz examined Plaintiff and issued a contemporaneous report. (R. 373-79). At that time, Plaintiff reported that the left side of his body felt "like it is on fire" and weak, but Plaintiff had no problem with his gait, ambulation, or motor function. (R. 373). Plaintiff stated he was right-handed and could perform fine and gross motor movements with either hand. *Id.*

Upon examination, Plaintiff walked normally without a cane or assistive device, but had mild difficulty getting on and off the examination table and squatting. (R. 374-75). Right hand grip strength was normal and left-hand grip strength was 70% of normal (4/5), with mild

impairment of digital dexterity.  (R. 375).  Plaintiff could oppose the thumbs to the fingers of either hand.  *Id.*  Dr. Rabinowitz noted "mild motor weakness of the left upper and left lower extremities with mild atrophy and no change in muscle tone."  *Id.*  "On a scale of one to five (with one being severe weakness and five being no weakness), the left upper and left lower extremities were 4/5 with the remaining motor strength testing within normal limits."  *Id.*  Lastly, Plaintiff's range of motion for his lumbar and cervical spine, shoulder, elbow, hand, wrist, hip, knee, ankle, and feet were all within normal limits, bilaterally.  (R. 378-79).

### 5. Dr. Thomas Renny – State Agency Reviewer

In April 2015, Dr. Renny reviewed the medical evidence for both Plaintiff's SSI and DIB claims at the reconsideration level.  (R. 81-99).  Dr. Renny found that Plaintiff had exertional, postural, and environmental limitations, and assessed Plaintiff's RFC at the medium exertional level.  (R. 85-88, 95-98).  More specifically, Dr. Renny found that Plaintiff could "occasionally" lift and/or carry 50 pounds; "frequently" lift and/or carry 25 pounds; stand, walk, and sit for about 6 hours in an 8-hour workday; "frequently" climb ramps, stairs, ladders, ropes, and scaffolds; and "frequently" balance, stoop, kneel, crouch, and crawl.  (R. 85-87, 95-97).  Plaintiff, however, was "limited" in his ability to handle, finger, and feel with the left upper extremity and needed to avoid "concentrated exposure" to extreme cold, extreme heat, and humidity.  (R. 86-87, 96-97).

### D.  Plaintiff's Self-Reports

#### 1. Adult Function Report

In October 2014, Plaintiff completed an Adult Function Report.  (R. 248-55).  Plaintiff reported numbness and pain on the left side of his body for 85% of the day, which affected his ability to stand after prolonged sitting.  (R. 248).  Plaintiff also reported headaches that impaired

his ability to see clearly out of his left eye. *Id.* Plaintiff could not sleep due to the headaches and burning sensation in his left leg. (R. 249).

Plaintiff's daily routine consisted of getting dressed, going to work, and taking care of his then 14-year-old son, whom he raised alone. *Id.* He reported no problems with handling his personal care. *Id.* Plaintiff left the house regularly, walked, and used public transportation. (R. 251). For example, Plaintiff shopped for groceries twice a week, went to the bank on a regular basis, and went to work 4-5 days a week. (R. 251-52). Plaintiff also prepared meals (with occasional help from his daughter) and did a few minutes of housework before having to rest. (R. 250).

Plaintiff reported that his impairments limited his ability to lift, squat, bend, stand, reach, walk, and kneel. (R. 253). Plaintiff could walk for 20 minutes before needing to stop for a few minutes to rest. *Id.* Plaintiff also indicated that he was not prescribed a cane nor did he use one. (R. 254).

### 2. Supplemental Pain Questionnaire

In February 2015, Plaintiff completed a Supplemental Pain Questionnaire. (R. 263-65). At that time, Plaintiff reported suffering from headaches and pain/burning in his left arm and legs. (R. 263). Plaintiff stated that prolonged standing strains his lower back, and he needs help to stand up after prolonged sitting because his legs "give out" or "go numb." *Id.* Plaintiff described daily pain, with some days being better than others. (R. 264). Walking helps reduce the pain, as does pain medication. (R. 264-65). Sleep can be difficult because of the burning pain in his leg. (R. 264). Plaintiff cooks, handles his personal care, and can do housecleaning and light laundry. *Id.* Plaintiff also shops with help from his children. *Id.*

## IV.    The ALJ's Decision

On May 2, 2017, after reviewing the evidence, and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff was not disabled under the Act.  (R. 24, 31).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2016, the alleged amended onset date.  (R. 26).

At Step 2, the ALJ found that Plaintiff's hypertension and trans ischemic attack (stroke) were severe impairments.  *Id.*  Conversely, the ALJ concluded that Plaintiff's sciatica was not a severe impairment.  *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (R. 26-27).

At Step 4, the ALJ determined that Plaintiff had the RFC to perform medium work, with the following postural and environmental limitations: frequently climb ramps, scaffolds, ladders, ropes, stairs, and crouch; frequently handle, finger and feel with the left upper extremity; perform work requiring far acuity; and avoid "concentrated exposure" to extreme cold/heat and humidity. (R. 27).  Although the ALJ found that Plaintiff could perform his past relevant work as a kitchen helper (an unskilled, medium job with an SVP of 2), the ALJ nonetheless continued to Step 5 of the sequential analysis.  (R. 29).

At Step 5, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as bagger (unskilled, medium job with an SVP of 2), cleaner II (unskilled, medium job with an SVP of 1), and deliverer merchandise (unskilled, medium job with an SVP of 2).  (R. 30).

# V.    DISCUSSION

Although Plaintiff's Motion for Summary Judgment raises numerous grounds for relief, Plaintiff withdrew or abandoned many of his arguments in subsequent proceedings before the Court.[5]  *See generally* (ECF No. 19).  Accordingly, Plaintiff's appeal raises two main issues: (i) whether the ALJ erred (at Step 4) in assessing Plaintiff's RFC (ECF No. 19 at 10-14); and (ii) whether the ALJ erred (at Step 5) in finding that there were other jobs in the national economy that Plaintiff could perform.  *Id.* at 14-15.  For the reasons discussed below, the undersigned affirms the ALJ's Decision.

## A.    The ALJ's Step 4 Analysis

A claimant's RFC is the most a claimant can do despite the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy.  *See*

---

[5] Specifically, Plaintiff withdrew or abandoned arguments in the Joint Status Report ("JSR") or at the hearing before the undersigned.  For example, in the JSR and during the hearing, Plaintiff withdrew his argument that the ALJ erred at Step 2 in finding that Plaintiff's sciatica was not a severe impairment.  *See* (ECF Nos. 25 and 29); *see also* Transcript of May 15, 2019 Hearing (ECF No. 36 at 4:13-23) ("Hr'g Tr.").  Similarly, Plaintiff confirmed at the hearing that he was not challenging the ALJ's decision to omit the use of a cane from Plaintiff's RFC.  *See* (ECF No. 19 at 12); Hr'g Tr. 5:1-12.  Plaintiff also abandoned the argument (ECF No. 19 at 12-13) that the ALJ erred by not including any reaching, handling, and fingering limitations in the RFC.  *See* (Hr'g Tr. 10:24-11:2; 11:18-12:5).  Lastly, Plaintiff abandoned his argument (ECF No. 19 at 14-15) that Plaintiff "Gridded-out" at the light exertional level.  *See* Hr'g Tr. 17:23-25; 21:19-22; 22:16-21.  Moreover, with reference to the Grids, the Court rejects Plaintiff's attempt to argue, for the first time at the hearing, that Plaintiff should be found disabled based on the Grids because of his "marginal" educational level.  *See* Hr'g Tr. 17:25-19:15; 21:22-22:12; *see Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 5885950, at *12 n.10 (S.D. Fla. Aug. 22, 2018) (citing *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived).  In any event, even on the merits, the undersigned finds no error in the ALJ's determination that Plaintiff had a "limited" educational level, which is defined as an educational level between 7th and 11th grade.  Hr'g Tr. 30:12-14; *see also* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3) (defining limited education).

20 C.F.R. §§ 404.1567, 416.967. Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An RFC determination is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Id.* Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (stating the assessment of a claimant's RFC is an issue reserved for the Commissioner); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (noting that "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors"). Moreover, the ALJ is not required to give any special significance to the opinion of medical sources on this issue. *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015) (upholding RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

Here, Plaintiff challenges the ALJ's RFC determination that Plaintiff can: (i) sit, stand, and walk without limitation; (ii) perform at the "medium" exertional level (*i.e.,* occasionally lift 50 pounds and frequently carry 25 pounds); and (iii) continue to work as a kitchen helper, a job that is defined in the DOT to require "frequent exposure" to extreme heat and humidity and "occasional exposure" to extreme cold, in light of Plaintiff's apparently conflicting RFC that Plaintiff "must avoid concentrated exposure to extreme cold/heat and humidity" when compared with the VE's testimony. (ECF No. 19 at 11-14).

1. *Substantial Evidence Supports the ALJ's Determination Regarding Plaintiff's Ability to Sit, Stand, and Walk*

Plaintiff asserts that the ALJ erred in not including any limitations in the RFC on his ability to sit, stand, and walk, arguing that "[t]he evidence in the medical record clearly and consistently

supports the fact that [Plaintiff] experienced pain down his right leg into his foot throughout . . . March of 2014 to the present." *Id.* at 12. Although Plaintiff is correct that the record contains repeated references to Plaintiff's self-reports of pain and burning on his left side, *see, e.g.,* (R. 419-24) (2014-15 visits to Dr. Richard noting complaints of left side weakness); (R. 248-49) (October 2014 Adult Function Report containing complaints of pain); (R. 263-65) (Plaintiff's February 2015 Supplemental Pain Questionnaire), the objective medical evidence does not support Plaintiff's allegations of disabling pain. Rather, the objective evidence provides substantial support to the ALJ's decision that Plaintiff was not limited in his ability to sit, stand, and walk.

For example, there is no support in the record for Plaintiff's purported need for or use of a cane. *See, e.g.*, (R. 320) (noting Plaintiff's "[m]uscle power is 5/5 in the bilateral legs"); (R. 322) (noting "no weakness in . . . lower extremities. Gait is normal."). In addition, although Plaintiff reported continued left lower extremity pain and weakness, consultative examiner Dr. Rabinowitz found that Plaintiff's gait, ambulation, and motor function were unimpaired. (R. 374-375, 377). Dr. Rabinowitz also expressly noted that: (i) Plaintiff walked normally without a cane or assistive device, but had mild difficulty getting on and off the exam table and squatting (R. 374-75); (ii) Plaintiff had "mild motor weakness of the left upper and left lower extremities with mild atrophy and no change in muscle tone (R. 375); (iii) on a scale of one to five (with one being severe weakness and five being no weakness), Plaintiff's "left upper and left lower extremities were 4/5 with the remaining motor strength testing within normal limits." *Id.* Lastly, Dr. Rabinowitz found Plaintiff's range of motion for the lumbar and cervical spine, shoulder, elbow, hand, wrist, hip, knee, ankle, and feet, were all within normal limits, bilaterally. (R. 377-79)

Similarly, in a November 2016 examination at Holy Cross Hospital, although Plaintiff complained of pain and burning in his left leg, Plaintiff had only mild weakness to left leg (4.5

strength, with 5 being normal strength), and was diagnosed with sciatica with no focal neurological deficit. (R. 433). Laboratory testing confirmed that Plaintiff did not suffer from deep vein thrombosis, lower extremity arterial insufficiency, or another stroke. (R. 435-37).

Further, as the ALJ correctly observed, Plaintiff's work history and daily activities are similarly inconsistent with his allegations of disabling symptoms. (R. 29). In this regard, the ALJ noted that Plaintiff worked continuously at McDonald's "since 1981 and continues to work there part-time, up to three hours per day, five days a week." (R. 27, 29). Moreover, Plaintiff did not use a cane while working. *Id*. The ALJ properly considered Plaintiff's past work history in evaluating the intensity and persistence of his pain. 20 C.F.R.§§ 404.1529(c)(3), 416.929(c)(3) (permitting consideration of prior work as a factor in evaluating the intensity and persistence of claimant's symptoms).

Regarding Plaintiff's daily activities, the ALJ noted that Plaintiff lived alone without assistance and cared for his minor son during the school year. (R. 27, 29, 43-44, 58-59). In addition, Plaintiff's daily routine consisted of getting dressed, going to work, and taking care of his then 14-year-old son, whom he raised alone. (R. 249). Plaintiff left the house regularly, walked, and used public transportation. (R. 251). He shopped for groceries twice a week, went to the bank on a regular basis, and went to work 4-5 days a week. (R. 251-52). In addition, Plaintiff prepared meals (with occasional help from his daughter) and did a few minutes of housework before having to rest. (R. 250). As with Plaintiff's work activities, the ALJ properly considered Plaintiff's daily activities in evaluating his allegations of a disabling impairment. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (consideration of claimant's activities of daily living, described as limited housework, driving short distances, and reading the paper, was

permissible in evaluating claimant's alleged limitations); *see* SSR 16-3p, 2016 WL 1119029 at *7 (Mar. 16, 2016) (providing that a claimant's daily activities should be considered when evaluating the intensity, persistence, and limiting effects of their symptoms).

Against this backdrop, the undersigned finds that substantial evidence supports the ALJ's RFC determination regarding Plaintiff's unlimited ability to sit, walk, and stand.

### 2. *Substantial Evidence Supports the ALJ's Determination that Plaintiff Could Function at the Medium Exertional Level*

Plaintiff next summarily argues that the ALJ erred in finding that Plaintiff could perform work at the medium exertional level, which would require him to lift/carry up to 50 pounds occasionally and up to 25 pounds frequently. (ECF No. 19 at 11). According to Plaintiff, "[t]he finding that [Plaintiff] can work at this level, given his documented impairments, is not supported by substantial evidence." *Id.* Plaintiff's argument, however, fails for a number of reasons. First, this single conclusory sentence is Plaintiff's *entire* argument on this point and is, therefore insufficient and unpersuasive. Second, and more importantly, this conclusory argument is simply unsupported by the medical record.

Although Plaintiff testified about disabling pain in his upper extremities, the medical evidence does not support his testimony. For example, Plaintiff testified that he suffered from constant severe pain in his left shoulder, much as he did in his legs. (R. 56). According to Plaintiff, the shoulder pain sometimes affected his ability to get dressed. *Id.* Still, Plaintiff lifted 10 to 11 pounds at his maintenance job at McDonald's. *Id.* In contrast to Plaintiff's subjective allegations, the objective medical evidence does not support the conclusion of disabling pain. For example, although Plaintiff complained on a few occasions to Dr. Richard about cramping in his hands, *see, e.g.*, (R. 426) (June 2014 visit complaining of cramps and electric sensation in his hands) and (R. 425) (complaining of difficulty opening a bottle), an April 2014 MRI of Plaintiff's left shoulder

revealed only "mild spurring" and no acute fracture or subluxation. (R. 369). In addition, upon examination by Dr. Rabinowitz in March 2015, Plaintiff's right-hand grip strength was normal and left-hand grip strength was 70% of normal (4/5), with mild impairment of digital dexterity. (R. 375). Although Dr. Rabinowitz noted "mild motor weakness of the left upper and left lower extremities with mild atrophy and no change in muscle tone," he also found that "[o]n a scale of one to five (with one being severe weakness and five being no weakness), the left upper and left lower extremities were 4/5 with the remaining motor strength testing within normal limits." *Id*. Lastly, Dr. Rabinowitz found Plaintiff's range of motion in his shoulder, elbow, and hand, were all within normal limits, bilaterally. (R. 378-79).

Against this uncontroverted medical record, the undersigned finds that substantial evidence supports the ALJ's RFC determination that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, as required at the medium exertional level.[6]

---

[6] Although Plaintiff does not explicitly argue that the ALJ erred in assessing Plaintiff's credibility, *see* (ECF No. 19 at 11-12), the undersigned has nonetheless reviewed the ALJ's credibility finding and concludes that the ALJ properly applied the Eleventh Circuit's three-part pain standard to evaluate Plaintiff's attempts to establish disability through his testimony and subjective symptoms. *McLain v. Comm'r, Soc. Sec. Admin*., 676 F. App'x 935, 937 (11th Cir. 2017). Here, the ALJ applied the proper standard, adequately articulated her reasons for discrediting Plaintiff's testimony, and correctly summarized the objective medical evidence in support of her decision. *See* (R. 28-29). Ultimately, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting evidence will not be disturbed. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation omitted). Moreover, the ALJ is not required to use any particular language in applying the pain standard, as long as she sufficiently articulates the reasons for discrediting Plaintiff's testimony. *Davis v. Barnhart,* 153 F. App'x 569, 572 (11th Cir. 2005). Accordingly, the undersigned finds no error in the ALJ's credibility determination in determining Plaintiff's RFC.

3. *The ALJ Failed to Address an Apparent Conflict between the DOT Definition of "Kitchen Helper," Plaintiff's RFC, and the VE Testimony*

Lastly, Plaintiff argues that the ALJ erred in failing to reconcile an apparent conflict between Plaintiff's RFC (requiring Plaintiff to avoid concentrated exposure to extreme heat, cold, and humidity) and the VE's testimony on the one hand, with the DOT definition of the kitchen helper job (requiring "frequent" exposure to extreme heat and humidity and "occasional" exposure to extreme cold) on the other hand. *See* (ECF No. 19 at 13-14); *compare* (R. 27) (Plaintiff's RFC) *with* DOT 318.687-010, 1991 WL 672755 (kitchen helper). At the hearing before the undersigned, Plaintiff expanded on this argument, noting that Plaintiff's RFC and the VE testimony also conflict with cleaner II, one of the alternative jobs that the ALJ found Plaintiff could perform at Step 5. Hr'g Tr. 17:10-18. According to Plaintiff, cleaner II requires exposure to "constant" humidity. *Id.*; *see* DOT 919.687-014, 1991 WL 687897 (cleaner II) (listing constant humid and/or wet conditions as job requirement).

In response to the Motion and again during oral argument before the undersigned, Defendant acknowledges the existence of a potential conflict between Plaintiff's RFC and the VE testimony with the DOT job definition of kitchen helper and cleaner II and admits that "it may be that there is an inconsistency there." (ECF No. 20 at 13-14); Hr'g Tr. 28:4-15 (admitting that the DOT classification of kitchen helper requires frequent exposure to heat and humidity and occasional exposure to cold and "looks inconsistent with the RFC to avoid concentrated exposure to extreme cold, heat, and humidity").

Although Plaintiff's discussion of this issue was cursory, the undersigned finds that the ALJ failed to comply with the requirements of Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), as recently clarified by the Eleventh Circuit in *Washington v. Comm'r of Soc, Sec.*, 906 F.3d 1353 (11th Cir. 2018). In *Washington,* the Court made clear that

an ALJ has an affirmative duty under SSR 00-04p "to identify, explain, and resolve" apparent conflicts between DOT data and VE testimony. *Id.* at 1356. Moreover, the ALJ's "duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT."[7] *Id.* at 1362. Rather, "if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Id.* at 1366.

Here, a simple comparison of the DOT definition for the kitchen helper and cleaner II jobs against Plaintiff's RFC and the VE testimony would have revealed the apparent conflict. As in *Washington,* the conflict here "is manifest from even a cursory, side-by-side, comparison of the VE's testimony and the DOT." *Id.* Accordingly, the undersigned finds that the ALJ erred in failing to identify, explain, and resolve this inconsistency before concluding that Plaintiff could return to his past relevant work or perform other work as cleaner II. *Id.* at 1362. Nonetheless, as discussed below, the ALJ's analysis at Step 5 mitigated any error.

### B. The ALJ Properly Concluded at Step 5 that Plaintiff Could Perform Other Jobs in the National Economy

Although the ALJ erred at Step 4 in not resolving the apparent conflict between the DOT on the one hand, and Plaintiff's RFC and the VE testimony on the other hand, the undersigned nonetheless finds this error harmless based on the ALJ's determination at Step 5. In this regard, a factual error by an ALJ can sometimes be subject to a harmless error analysis. *Clark v. Comm'r*

---

[7] An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365. At a minimum, a conflict is apparent if a "reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

*of Soc. Sec.*, No. 2:17-CV-501-FtM-99DNF, 2019 WL 1091244, at *4 (M.D. Fla. Mar. 8, 2019) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Here, the ALJ expressly concluded that Plaintiff could perform two other non-conflicting jobs in the national economy: bagger (DOT 920.687-014, with 713,130 national jobs), 1991 WL 687964, and merchandise deliverer (DOT 299.477-010, with 73,180 national jobs), 1991 WL 672638. (R. 29-30); *see also* (ECF No. 20 at 14); Hr'g Tr. 28:16-23; (R. 61-64). Accordingly, even if the ALJ erred in concluding that Plaintiff could perform the jobs of kitchen helper and cleaner II, the error is harmless since the jobs of bagger and merchandise deliverer support the ALJ's finding at Step 5 that there are jobs in significant numbers in the national economy that Plaintiff can perform.[8] *See, e.g., Tellier v. Colvin*, No. 3:15-CV-663-J-JBT, 2016 WL 7438048, at *3 (M.D. Fla. Feb. 19, 2016) (concluding that error was harmless because two occupations provided 68,000 jobs in the national economy); *Bristol v. Colvin*, No. 1:11CV959-WC, 2013 WL 2147476, at *3 (M.D. Ala. May 15, 2013) (finding an ALJ error at Step 4 harmless because the ALJ went on to Step 5 and identified other jobs within the national economy that plaintiff could perform); *Bohn v. Astrue*, No. 8:12-CV-354-T-TGW, 2013 WL 494059, at *6 (M.D. Fla. Feb. 7, 2013) (affirming administrative decision where one job alone supported ALJ's finding).

In sum, the Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Rather, this Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the ALJ's decision is affirmed.

---

[8] Indeed, limitations to extreme cold/heat, and wetness and/or humidity are "not present" in the jobs of bagger and merchandise deliverer. *See* DOT 920.687-014, 1991 WL 687964, DOT 299.477-010, 1991 WL 672638.

## VI.    CONCLUSION

Accordingly, for the reasons stated above, it is **ORDERED AND ADJUDGED** that:

1.      Plaintiff's Motion for Summary Judgment (ECF No. 19) is **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 20) is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

2.      The Clerk is directed to enter judgment in favor of Defendant, to terminate all pending motions, and to **CLOSE** the case.

   **DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on September 27, 2019.


                                    _____
                                    ALICIA O. VALLE
                                    UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record